UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

HOLSUM DE P.R., INC.,

Plaintiff,

v.

CIVIL NO. 18-2004 (GAG)

COMPASS INDUS. GROUP LLC; et al.,

Defendants.

## OPINION AND ORDER

Holsum de Puerto Rico, Inc. ("Holsum" or "Plaintiff"), filed this suit against Compass Industrial Group, LLC ("Compass"), and ITW Food Equipment Group LLC d/b/a Peerless Food Equipment ("Peerless") alleging a breach of the contracts for the design, manufacture, and installation of a "Cameo" brand cookie-sandwiching machine under P.R. LAWS ANN. tit. 31, § 3018, and negligence under P.R. LAWS ANN. tit. 31, § 5141. (Docket No. 36). Federal jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Id.

Presently before the Court is Compass's motion seeking to stipulate facts as well as three motions in limine to exclude two of Plaintiff's witnesses and their proffered calculations of damages, which Peerless filed for joinder. (Docket Nos. 109-112; 117). Plaintiff responded in opposition. (Docket Nos. 118-121). Per leave of Court, Compass replied and Plaintiff sur-replied. (Docket Nos. 129-132; 136).

**I.    Factual and Procedural Background**

On January 30, 2017, Holsum entered into a contract with Peerless for the design of a sandwiching machine to produce Cameo cookies. (Docket Nos. 36 at 3-4). On March 16, 2017, Holsum entered into two contracts with Compass based on Peerless's recommendation. (Docket

**Civil No. 18-2004 (GAG)**

Nos. 36 at 4; 64 ¶¶ 12-13; 69 ¶¶ 12-13). The first contract is for the design and manufacture of a machine known as the "Tray Loader" that would serve as a component in the cookie-sandwich assembly line necessary for Cameo production and the second contract is for the Tray Loader's installation. (Docket Nos. 36 at 4; 64 ¶ 11; 69 ¶ 11; 101 ¶ 2; 116 ¶ 2). Compass sent personnel to install the Tray Loader and billed Holsum for $588,690.40 of which Holsum only paid $435,673.00 while disputing the remaining owed amount. (Docket Nos. 101 ¶¶ 9-10; 116 ¶¶ 9-10). Holsum avers that the Tray Loader was defective and ill-equipped to function according to the terms of the contracts. (Docket No. 36 at 9).

On December 26, 2019, Holsum filed the present suit against Compass, which consequently filed a counterclaim asserting that Holsum breached the contract by failing to pay for the Tray Loader. (Docket Nos. 1 at 6; 18 at 15). The Court issued an Opinion and Order denying Compass's motion for summary judgment on the counterclaims for the debts owed because there is a genuine and material issue of fact as to whether the Tray Loader was installed and, if so, who is at fault for the Tray Loader's lack of installation. (Docket No. 90). Furthermore, Magistrate Judge Camille L. Vélez-Rivé approved the joint proposed pretrial order over Compass's objections. (Docket Nos. 101; 102; 115).

      a. <u>Motion to stipulate facts</u>

Compass's first motion requests the Court to consider certain facts to be admitted into the factual record and incorporate them to the joint proposed pretrial order. (Docket No. 109). Compass alleges that Holsum has "obstinately refused" to accept admitted facts as stipulated in the joint proposed pretrial order and that it should be judicially estopped from making inconsistent assertions. <u>Id.</u> at 1, 8-10. However, Plaintiff states, "Compass is . . . creating the false impression that Holsum is now bent on denying those facts it has already admitted[.] Nothing is further from the truth."

(Docket No. 118 at 1-2). For comity's sake, Plaintiff accepts to stipulate all facts that Compass accuses Plaintiff of refusing to have admitted in its motion at Docket No. 109, Section IV. (Docket Nos. 136 at 3; 137 at 2). Moreover, the parties reached a resolution as to the "proposed uncontested material facts" set forth by Holsum in the joint proposed pretrial order. (Docket No. 137). Compass is only willing to stipulate to the following "proposed uncontested material facts:" 1, 2, 3, 4, 5, 6, 8, and 9. Id. As such, the Court hereby **NOTES** Compass's motion to stipulate facts at Docket No. 109 and details all admitted facts. The stipulated facts according to Docket No. 109, Section IV are:

1. The contract between the parties required payments to be made according to the following schedule: 30% was due upon receipt of the executed purchase order; 30% was due sixty days from the date of the executed purchase order; 30% was due prior to delivery; and 10% was due within thirty days of arrival of the equipment's delivery to Holsum de Puerto Rico Inc.'s ("Holsum") facility.

2. The contract amount excluded installation of the equipment by Compass' personnel. Installation was billed separately.

3. Holsum incurred additional costs including: fabrication of a stainless-steel panel as an upgrade in the amount of $5,338.00; an expedited charge to decrease time to delivery in the amount of $74,970; and fabrication of an empty tray conveyor in the amount of $18,000.

4. Pursuant to the contract, installation was billed separately.

5. Compass had personnel at Holsum's facility to install the Tray Loader from August 15 to September 5, 2017, during which time it billed a total of $75,437.97.

6. Compass sent an engineer back to Holsum's facility on September 16 and he stayed until September 23, 2017. Compass billed $10,647.87 for this service visit.

3

7. Compass sent an engineer back to Holsum's facility from October 22 through November 8, 2017. Compass billed $27,646.56 for this service visit.

8. In total, Compass billed to Holsum $588,690.40.

9. Holsum de Puerto Rico, Inc. ("Holsum") contracted with Compass Industrial Group, LLC (Compass) for Compass to build a machine that would serve as one component in a cookie-sandwich assembly line known as Tray Loader.

10. On March 14, 2017, Compass sent a quote with its terms to Holsum.

11. Miguel Pereira, Holsum's Engineer and Mondelez Project Manager, accepted this Order Placement and Quote No. 170314 on March 16, 2017 and, thus, the binding and applicable contract was formed.

12. At the time Holsum contracted with Compass, it had already ordered the Peters machine from Co-Defendant Peerless.

On the other hand, the stipulated facts according to the joint proposed pretrial order (Docket No. 101) are:

1. In November 2016, Holsum entered into a contract with Mondelez International, Inc. (hereinafter "Mondelez") for the production, within a strict timetable, of the Cameo sandwich cookie in its facilities in Toa Baja, Puerto Rico.

2. In furtherance of its agreement with Mondelez, and in preparing a manufacturing line that could successfully and efficiently produce the Cameo sandwich cookie in a timely fashion consistent with the obligations it had entered into with Mondelez, Holsum soon began the process of identifying the necessary machinery for completing the project.

3. Against this background, Holsum requested proposals from various manufacturers for the design, manufacturing, and installation of the PT2 and the Tray Loader.

4. On or around January 30, 2017, Holsum entered into an agreement with Peerless for the design of the PT2. Pursuant to their agreement, Peerless bound itself to design, manufacture and install a two-row sandwiching machine model PT2 for the Cameo project.

5. Holsum has paid Peerless a grand total of $306,417.20 for the PT2.

6. Peerless, moreover, referred Holsum to Compass for the design, production, and installation of the Tray Loader. Hence, on or around February 27, 2017, Holsum extended Compass a request for proposal for the design of the Tray Loader that would load the Cameo cookie sandwiches assembled by the PT2.

7. On March 14, 2017, Compass forwarded its proposal for a Tray Loader to Holsum. Compass' proposal made it plain clear that its Tray Loader would be compatible with the PT2 Holsum had already bought from Peerless.

8. On March 16, 2017, Holsum accepted the terms offered by Compass, placed an order with Compass for the design, manufacture, and installation of the Tray Loader and on that same day sent Compass a deposit in the amount of $112,455.

II. **Discussion**

    a. <u>Motion to exclude Holsum's proposed witness Ernesto Morales Bloise</u>

Compass's second motion seeks to exclude the proposed testimony of Holsum' distribution manager, Ernesto Morales Bloise, regarding the calculation of damages. (Docket No. 110). Compass alleges that the proffered lay witness was never named in Plaintiff's initial disclosures nor in its answers to interrogatories as a person with knowledge of the facts. Id. at 1. Compass claims it became aware of Plaintiff's witness for the first time in the joint proposed pretrial order. (Docket No. 110 at 5). Compass argues that Plaintiff's witness should not be allowed to testify because it

5

contravenes with the disclosure requirements under FED. R. CIV. P. 26 as well as the interrogatory requirements under FED. R. CIV. P. 33. Id. at 2-6.

Rule 26 of the Federal Rules of Civil Procedure facilitates pretrial discovery by placing an affirmative duty on litigants to provide, in advance of trial, the name "of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A); see also Torres-Rivera v. Centro Médico Del Turabo Inc., 215 F. Supp. 3d 202, 205 (D.P.R. 2016). Specifically, FED. R. CIV. P. 26(a)(3)(B) requires that pretrial disclosures be made at least thirty days before trial. Ares-Pérez v. Caribe Physicians Plaza Corp., 261 F. Supp. 3d 265, 268 (D.P.R. 2017). The provisions of Rule 26 regarding supplementing disclosures ultimately control the timing of the disclosure of a fact witness. Providence Piers, LLC v. SMM New England, Inc., Civil No. 12-532S (PAS), 2015 WL 9699936, at *3 (D.R.I. Oct. 1, 2015); see also FED. R. CIV. P. 26(e).

Compass's legal basis for excluding evidence is Rule 37(c)(1), which penalizes a party that "fails to provide information or identify a witness as required by Rule 26(a) or (e)" by disallowing the "use of that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The sanction of exclusion of evidence is not automatic. See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009) ("Preclusion . . . 'is not a strictly mechanical exercise.'") (quoting Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este, 456 F.3d 272, 276 (1st Cir. 2006)). "The mere fact of a late witness disclosure does not require the district court to bar the testimony." Laplace–Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002) ("[D]istrict courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations."). An illustrative example of harmlessness under FED. R. CIV. P.

37(c)(1) is "late disclosures of a potential witness known to all parties[.]" Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006).

To determine whether a party's late disclosure is "substantially justified" or "harmless," the Court considers: (1) the history of the litigation; (2) the need for the evidence; (3) the justification (or lack of one) for the late disclosure; (4) the opposing party's ability to overcome the late disclosure's adverse effects (surprise and prejudice), and (5) the impact of the late disclosure on the court's docket. Esposito, 590 F.3d at 76-78 (citing Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)). Although in Esposito the controversy involved the late disclosure of experts, district courts have also applied the factors to late disclosures generally. See Díaz-García v. Surillo-Ruiz, 98 F. Supp. 3d 396, 401, n. 6 (D.P.R. 2015).

Compass's argument that Plaintiff did not comply with the discovery duties under FED. R. CIV. P. 26 fails because no trial date has been set. Plaintiff has properly identified a possible lay witness given that the trial will not take place within the next thirty days. See Order at Docket No. 135 ("This case is trial ready. The undersigned expects to schedule all of its civil trials starting August 1, 2021, and throughout the beginning of 2022."). Moreover, Compass's argument fails because it knew about Mr. Morales Bloise for nearly five months before the expiration of the July 3, 2020, discovery deadline. See Gagnon, 437 F.3d at 197 (noting late disclosure of potential witness known to all parties as harmless and not worthy of sanctions under Rule 37). On February 5, 2020, during the first deposition of Mr. Morales Bloise's supervisor—Julio Vigoreaux Carreras— Compass inquired about Mr. Morales Bloise's identity and his role in calculating how many Cameo cookies have been produced over a certain period. (Docket No. 119-1). Furthermore, Compass questioned Mr. Vigoreaux Carreras during his second deposition on March 10, 2020, regarding Mr. Morales Bloise's involvement generating the calculations of damages. (Docket Nos. 119-2; 119-3).

Since Mr. Morales Bloise was disclosed as a testifying witness more than thirty days prior to trial, Plaintiff's disclosure is permissible. In addition, because Compass knew of Mr. Morales Bloise could have been a potential witness *with knowledge of the facts* five months prior to the close of discovery, Plaintiff's disclosure that Mr. Morales Bloise will be a testifying witness is harmless and ought not to be excluded. For the above reasoning, the Court hereby **DENIES** Compass's motion in limine at Docket No. 110.

b. <u>Motion to exclude Plaintiff's summaries of damages</u>

Compass's third motion petitions the Court to exclude Plaintiff's summaries regarding the calculations of damages. (Docket No. 111). Specifically, Compass seeks to exclude the documents titled, "Cameo Line Alternate Arrangement Cost Analysis" and "Cameo 'Snack & Seal' Work Table – Incremental Costs Relating to Additional Personnel Assigned to Place Cookies into Trays." (Docket Nos. 131-2; 131-3). Compass alleges it did not have the opportunity to cross-examine the author of these summaries because Plaintiff disclosed them after discovery had concluded. (Docket No. 111 at 1). Compass argues that the calculations for damages, the summaries, and any testimony relating to it should be excluded from the factual record pursuant to the disclosure requirements under FED. R. CIV. P. 26 and the summaries requirement under FED. R. EVID. 1006. <u>Id.</u> at 4-7.

Compass's argument under FED. R. CIV. P. 26 fails because Compass obtained a calculation of damages during the ordinary course of discovery and Holsum's late disclosure of the revision to its calculation of damages is harmless. On March 10, 2020, Holsum provided Compass its calculation of damages titled "Cameo Line Alternate Arrangement Cost Analysis" during the second deposition of Mr. Vigoreaux Carreras. (Docket Nos. 111 at 2-3; 131-2). Factual discovery was supposed to end on June 15, 2020, but the parties extended it via mutual agreement until July 3, 2020, so that Compass could finalize its deposition of Mr. Vigoreaux Carreras. (Docket Nos. 121 at

3-4; 131 at 2). Evidently, Compass was in possession of Holsum's calculation of damages for four months before discovery ended.

On July 3, 2020, during the third and final deposition of Mr. Vigoreaux Carreras, Holsum turned over a second calculation of damages. (Docket Nos. 111 at 3; 131-3). Compass complains that it did not have ample opportunity to cross examine Holsum regarding a decrease of $134,125 between the first and second calculation of damages.[1] (Docket No. 111 at 6-7). Holsum advances that the second calculation of damages is a revision of the first calculation. (Docket No. 136 at 7). The first calculation imputed upon Compass the labor costs of thirty-eight employees whose manual assistance was required to continue production of Cameo cookies. (Docket Nos. 136 at 7, n. 7; 131-2). Meanwhile, the second calculation assigns the labor costs of only thirty-four employees to the calculation of damages because four employees were wrongly attributed to Compass and should have been attributed to Peerless. (Docket Nos. 136 at 7, n. 7; 131-3). Moreover, Holsum changed the unit of measurement of the billable hours for these employees from per week to per month. Id. Henceforth, Plaintiff's late disclosure of the revision to its calculation of damages is harmless and does not warrant exclusion under FED. R. CIV. P. 26 because the changes were minor and the calculation methodology for damages remained the same as the first calculation, which Compass had time to review *before* the conclusion of discovery. FED. R. CIV. P. 37(c)(1); see also Cruz-Vázquez v. Mennonite General Hosp., Inc., 613 F.3d 54, 58, n. 1 (noting Rule 37(c)(1) provides that party who violates this rule may not use undisclosed information at trial "unless the failure was substantially justified or is harmless").

---

[1] The March 10, 2020, calculation of damages is $547,738 and the calculation of damages offered on July 3, 2020, is $413,613. (Docket No. 136 at 6).

Compass's argument that the calculations of damages should be excluded under the requirement for summaries under FED. R. EVID. 1006 also fails. Rule 1006 provides that "a party may summarize the contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court, so long as the summary is accurate, the underlying documents are made available to the other parties, and both the summary and the source materials are admissible." U.S. v. Appolon, 695 F.3d 44, 61 (1st Cir. 2012); see also FED. R. EVID. 1006. Rule 1006 does not require that the documents being summarized also be admitted. FED. R. EVID. 1006; see also U.S. v. Appolon, 715 F.3d 362, 374 (1st Cir. 2013); United States v. Milkiewicz, 470 F.3d 390, 396 (1st Cir. 2006) ("[T]he evidence underlying Rule 1006 summaries need not be introduced into evidence"). District courts "are advised to carefully weigh the volume and complexity of the materials. These two factors have an inversely proportionate relationship: as either the volume or complexity increases, relatively less is required of the other factor." Appolon, 695 F.3d at 61. The ultimate question is "whether summarization will remove logistic or cognitive barriers to the jury's discharge of its duties[.]" Id.; see also United States v. Bakker, 925 F.2d 728, 736 (4th Cir. 1991); United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir. 1979).

Here, Plaintiff's summaries depicting the calculation of damages are based on admissible payroll records and employee timesheets under FED. R. EVID. 803(6) for records of a regularly conducted business activity spanning thirty-one months. Plaintiff has made the underlying documents available for examination (i.e. the source material for Holsum's calculation of damages). (Docket Nos. 121-4; 120-1). Thus, the Court holds that these summaries remove voluminous, yet relatively straightforward logistic barriers that facilitate the jury's role in ascertaining damages and, as a result, are admissible. Consequently, the Court hereby **DENIES** Compass's motion in limine at Docket No. 111.

      c.   Motion to exclude Holsum's proposed witness Julio Vigoreaux Carreras

Lastly, Compass's fourth motion asks the Court to exclude the proposed testimony of Holsum's Executive Vice President, Mr. Vigoreaux Carreras. (Docket No. 112). Compass alleges that Mr. Vigoreaux Carreras stated that the calculation of damages requires his very specialized expertise of an MBA-holding accountant for a production-level bakery. Id. at 1. Compass claims that Mr. Vigoreaux Carreras should be considered an expert witness under FED. R. EVID. 702 and that he should not be allowed to testify in relation to the calculations of damages because he has not submitted an expert report according to FED. R. CIV. P. 26. (Docket No. 112 at 1). Compass argues that Mr. Vigoreaux Carreras is an expert witness because his analysis of the data was not based upon his own observations of damages but rather those of his employee, Mr. Morales Bloise. (Docket No. 112 at 2-5). Since Plaintiff never formally designated him as an expert, Compass argues Mr. Vigoreaux Carreras is prohibited from testifying as to the calculations of damages. Id. Holsum rebuts this position by proclaiming that Mr. Vigoreaux Carreras is a lay witness under FED. R. EVID. 701 rather than an expert witness. (Docket No. 120).

Unless the Federal Rules of Evidence provide otherwise, every person is competent to be a witness. Pérez-García v. P.R. Ports Auth., 874 F. Supp. 2d 70, 72 (D.P.R. 2012); see also FED. R. EVID. 601. A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Pérez-García, 874 F. Supp. 2d at 72-73; see also FED. R. EVID. 602. Evidence to prove personal knowledge may consist of the witness's own testimony. Pérez-García, 874 F. Supp. 2d at 73; see also FED. R. EVID. 602.

Rule 701 provides that lay witnesses may testify in the form of an opinion only if it is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other

11

specialized knowledge within the scope of Rule 702. Pérez-García, 874 F. Supp. 2d at 73; see also FED. R. EVID. 701, 702. The Advisory Committee on Evidence Rules of the Judicial Conference of the United States has noted that:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. See, e.g., Lightning Lube, Inc. v. Witco Corp. 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted *not because of experience, training or specialized knowledge* within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

FED. R. EVID. 701, Advisory Committee Notes, 2000 Amendment (emphasis added); see also 29 Wright & Miller, Fed. Prac. & Proc. § 6254 (2d ed. 2020) (noting "where the witness is the owner or longtime employee of a business, she may offer a lay opinion as to office procedures, profits or other matters that would require significant experience with the operation of the business.").

According to the joint proposed pretrial order, Mr. Vigoreaux Carreras's testimony relates to his supervision of Miguel Pereira Ruiz—engineer and project manager of the Cameo cookie production line—and "to the damages sustained by Holsum and other relevant facts of the case that he witnessed." (Docket No. 101 at 82). As lay witness, Mr. Vigoreaux Carreras may testify about matters within his personal knowledge. He is an employee of Holsum and, therefore, may have personal knowledge of how the events unfolded and the costs incurred. (Docket No. 112 at 2). If a proper foundation is laid, Mr. Vigoreaux Carreras may testify as to his personal knowledge. Cf. Pérez-García, 874 F. Supp. 2d at 73 (prohibiting OSHA regulators from testifying about machine at issue unless witness demonstrates personal knowledge). Consequently, Mr. Vigoreaux Carreras's testimony as to the costs incurred will not be excluded from trial and the Court **DENIES** Defendants' motion in limine at Docket No. 112.

**Civil No. 18-2004 (GAG)**

### III. Conclusion

For the foregoing reasons, the Court **NOTES** Compass's motion to stipulate facts at Docket No. 109 and **DENIES** Compass's motions in limine at Docket Nos. 110, 111, and 112.

**SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of March 2021.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge
