UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| HOLSUM DE PUERTO RICO, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:18-cv-02004-JAW |
| ) | |
| COMPASS INDUSTRIAL GROUP ) | |
| LLC; ILLINOIS TOOL WORKS, INC.; ) | |
| ITW FOOD EQUIPMENT GROUP ) | |
| LLC d/b/a PEERLESS FOOD ) | |
| EQUIPMENT; INSURANCE ) | |
| COMPANY ABC; INSURANCE ) | |
| COMPANY DEF; INSURANCE ) | |
| COMPANY XYZ, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON COMPASS' MOTION IN LIMINE**

A defendant brings a motion in limine pursuant to Federal Rules of Evidence 401, 403 and 404 to exclude references to a deceased deponent's death and statements made by the deponent about the plaintiff, his employer. The Court denies the party's motion in limine.

**I.   BACKGROUND**

On December 26, 2018, Plaintiff Holsum de Puerto Rico, Inc. (Holsum) filed a two-count Complaint against Compass Industrial Group, LLC (Compass) and Insurance Company ABC alleging breach of contract and negligence. *Compl.* (ECF No. 1). On April 2, 2019, Compass answered the Complaint and filed a counterclaim against Holsum alleging breach of contract. *Answer to Compl. and Countercl.* at 8-16 (ECF No. 18). On May 3, 2019, Holsum filed an Amended Complaint adding co-

defendants Illinois Tool Works, Inc, Insurance Company DEF, ITW Food Equipment Group LLC d/b/a/ Peerless Food Equipment (Peerless), and Insurance Company XYZ to the Complaint. *Am. Compl.* (ECF No. 36). Counts One and Three alleged breach of contract and negligence against Compass and Counts Two and Four alleged breach of contract and negligence against Peerless. *Id.* at 8-10. The case is now scheduled for trial to begin on March 28, 2022.

On September 3, 2021, the Court held a final pretrial conference with counsel. *Min. Entry* (ECF No. 155); *Report of Final Pretrial Conference and Order* (ECF No. 156) (*Pretrial Report and Order*). At the conference, counsel for Holsum advised the Court that Julio E. Vigoreaux Carreras,[1] formerly Holsum's Executive Vice President and a previously deposed fact witness for Holsum, is deceased. *Pretrial Report and Order* at 2. Holsum informed the Court that it anticipated presenting Mr. Vigoreaux's deposition testimony at trial in light of his unavailability for live testimony. *Id.*

On October 18, 2021, Compass filed a motion in limine requesting that the Court exclude from evidence any references to Mr. Vigoreaux's death. *Mot. in Lim. Regarding the Exclusion of any Reference to Deceased Status of Proposed Witness Julio Vigoreaux* (ECF No. 184) (*Compass' Mot. in Lim.*). Finally, on October 22, 2021, Holsum responded in opposition to Compass' motion in limine. *Holsum's Opp'n to Compass's in Lim. Mot. (at Docket No. 184) Regarding the Exclusion of Any Reference to the Death of Mr. Julio Vigoreaux* (ECF No. 193) (*Holsum's Opp'n*).

---

[1] The parties refer to Mr. Vigoreaux Carreras as "Mr. Vigoreaux;" the Court does the same.

2

## II.     THE PARTIES' POSITIONS

### A.     Compass' Position

Compass argues that "[t]he mention during trial of [Mr. Vigoreaux's death] runs afoul of FRE 402, 403, and 404(b), and should be excluded, as should portions of [Mr. Vigoreaux's] testimony that serve to bolster the Plaintiff's reputation in the community." *Compass' Mot. in Lim.* at 1. Compass says that Mr. Vigoreaux "expressed pride in his long-time employer-Holsum" and "attempted to make Holsum look like a 'good company'" in his deposition testimony. *Id.* at 3. Compass believes this evidence should be excluded because "[n]one of [it] is relevant to the facts of this case under Rule 105 and . . . would clearly violate Rule 403."[2] *Id.* at 3. Compass contends that even if the Court were to consider such evidence relevant, the "prejudicial effect [of the evidence] outweighs any possible probative value" and "would likely make the jury biased in favor of Holsum, and against Compass." *Id.* at 6. Compass submits that "Holsum cannot argue that the references to Mr. Vigoreaux's passing are an essential part of any of its claims or its defenses to Compass' counterclaim in this contractual rights litigation." *Id.* "Thus, [Compass says the evidence] has zero probative value to [Holsum] while being unfairly prejudicial to Compass." *Id.* Compass contends that "[t]he unfairly prejudicial

---

[2]     Compass makes several references to Rule 105, which is the Federal Rule of Evidence governing limiting instructions. Rule 105 states that "[i]f the court admits evidence that is admissible against a party or for a purpose – but not against another party or for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." FED. R. EVID. 105; *Compass' Mot. in Lim.* at 3 (arguing that the evidence "is also both irrelevant and should be excluded under Evidence Rules 105, 403 and 404"). Rule 105 is not a relevancy or exclusion rule, nor does Compass appear to request a limiting instruction in its motion. Based on the context of Compass' motion, the Court assumes that Compass intended to cite Rule 401 or 402.

standard set forth by Rule 403 is met and this Court must enter an order excluding any mention of Vigoreaux's passing at trial." *Id.* Compass also submits that references to Mr. Vigoreaux's character would violate Rules 404 and 608.[3] *Id.* at 3.

### B.   Holsum's Opposition

In opposition to Compass' motion in limine, Holsum offers five "observations." First, Holsum contends that Compass' motion is an effort to "resurrect[] (and relitiga[te])" issues previously settled by the Court. *Holsum's Opp'n* at 2-3.

Second, Holsum says that "Compass [is] misleading [the Court]. . . [and] attempt[ing to] misconstrue[] the facts of this case" by representing that Mr. Vigoreaux was not in charge of the project at issue in this suit, when in fact he had "full responsibility for the manufacturing, sales, and distribution of Holsum's wide catalogue of bakery products --- including the Cameo cookie." *Id.* at 3.

Third, Holsum argues that Compass is making a "veiled accusation that Holsum somehow tried to conceal Mr. Vigoreaux's death in an effort to influence the course of the present litigation" despite the fact that "Mr. Vigoreaux's death . . . was a public affair in Puerto Rico." *Id.* at 4.

Fourth, Holsum contends that "Compass grossly misconstrues the scope of [Federal Rules of Evidence] 401, 403, 404(b) and distorts the weighing test required

---

[3]   Compass makes a passing argument that the Court should exclude any references to Mr. Vigoreaux's own character under Rules 404 and 608. *See Compass' Mot. in Limine* at 3, 6-7. However, Compass does not provide any substantive argument that Holsum is attempting to offer this evidence, nor does Compass do more than reference the evidentiary rules.  It is well established that "[u]nderdeveloped arguments not supported by legal authorities are deemed waived and/or abandoned." *United States v. Perez-Velazquez*, 488 F. Supp. 2d 82, 87 n. 6 (D.P.R. 2007). In the absence of a particularized argument, the Court rejects Compass' efforts to exclude this evidence; however, Compass may renew its objection during trial should Holsum attempt to introduce character evidence in contradiction to Rules 404 and 608.

under Rule 403." *Id*.  Holsum says that none of the cases Compass cites supports the proposition that there should be a categorical bar against any reference to Mr. Vigoreaux's death or to Holsum being a "good company." *Id*. at 4-5.  In particular, Holsum submits that the Supreme Court has "made it clear that '[r]elevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, <u>and thus are generally not amenable to broad *per se* rules</u>.'"  *Id*. at 5 (emphasis and alterations in *Holsum's Opp'n*) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)).  Holsum also says that the Supreme Court has found that "outright exclusion was not required under Rule 403" where limiting instructions for certain testimony can prevent unfair prejudice within the meaning of Rule 403.  *Id*.  Finally, Holsum believes that "Compass's attempt at seeking refuge in *Old Chief* . . . is grossly misplaced" because the scope of that case "ought to be circumscribed to its very specific factual and legal context."  *Id*. at 6.

### III. LEGAL STANDARD

#### A. Federal Rule of Evidence 401

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."  *United States v. Abel*, 469 U.S. 45, 54 (1984).  Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  FED. R. EVID. 401.  Thus, "[r]elevancy is a very low threshold."  *United States v. Cruz-*

*Ramos*, 987 F.3d 27, 42 (1st Cir. 2021). "'[T]he evidence need not definitively resolve a key issue in the case,' but rather 'need only move the inquiry forward to some degree.'" *Id.* (quoting *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010)). In the First Circuit's words, "it is no exaggeration to say that '[a] relevancy-based argument is usually a tough sell.'" *Id.* (alterations in *Cruz-Ramos*) (quoting *Bielunas*, 621 F.3d at 76).

### B.     Federal Rule of Evidence 403

Relevant evidence is generally admissible, while "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. However, under Federal Rule of Evidence 403, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

"In conducting a Rule 403 analysis for being unfairly prejudicial, the court only seeks to avoid unfair prejudice, because all evidence is designed to be prejudicial in some capacity." *Pérez-Garcia v. P.R. Ports Auth.*, 871 F. Supp. 2d 62, 64 (D.P.R. 2012) (citing *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000)). "The exclusion of evidence is not the general rule; to the contrary, the 'trial court's discretion to exclude relevant evidence under Rule 403 should be exercised with recognition that exclusion is extraordinary and to be invoked sparingly.'" *Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 293 (D.P.R. 2017) (emphasis omitted) (quoting FEDERAL COURTROOM EVIDENCE § 403.2.1).

## IV. DISCUSSION

### A. Evidence of the Death of Julio E. Vigoreaux

The Court concludes that evidence reflecting Mr. Vigoreaux's death is relevant. First, Mr. Vigoreaux was Holsum's Executive Vice President during the period in controversy. As he has died, Mr. Vigoreaux is now unavailable as a trial witness and will not be present at the trial itself either as a party representative at counsel table or as a live witness. The jury might well wonder why someone who was Executive Vice President of Holsum and whose testimony is being presented by deposition was not present at the trial itself either as Holsum's representative or as a live witness. The jury might draw some unwarranted negative inferences from Mr. Vigoreaux's lack of physical presence, including that he had concluded that the trial was not sufficiently important for him to attend. If the jury is informed about the fact and date of his death, the possibility of an unfair conclusion about his physical absence will be eliminated.

In rendering a verdict, the jury must make credibility determinations about the witnesses and the evidence presented to it. As the Court just indicated, information as to why Mr. Vigoreaux is not present in the courtroom may assist the jury in deciding whether to credit Mr. Vigoreaux's deposition testimony. *See United States v. Lopez-Ortiz*, 736 F. Supp. 2d 469, 470 (D.P.R. 2010) ("[E]vidence regarding the credibility of the . . . witnesses is relevant and admissible under Rule 401 and Rule 402"). Informing the jury of Mr. Vigoreaux's death may therefore "move the inquiry forward to some degree" even if it does not "resolve a key issue in the case." *Cruz-Ramos*, 987 F.3d at 42; *see also United States v. Partin*, 493 F.2d 750, 762 (5th

7

Cir. 1974) ("The readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth . . . . It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know, and correctly relate the truth").[4]

Furthermore, the Court does not view the fact of Mr. Vigoreaux's death as prejudicial. There is no suggestion that the jury will be informed anything other than the fact and date of Mr. Vigoreaux's death. There is no contention that Mr. Vigoreaux's death was related to the dispute in this case and Holsum's counsel has not asserted the right to ask the jury to make such an inference.

Nor is the Court impressed with Compass' worry that once the jury is informed that Mr. Vigoreaux died, it will issue a verdict for Holsum because of its sympathy for Mr. Vigoreaux's death. As is standard practice, the Court will instruct the jury that "[t]he law does not permit you to be governed by sympathy, prejudice, or public opinion." *See Proposed Final Jury Instructions* at 1. The Court has no reason to conclude that the mere mention of a deponent's death will cause the jurors to violate their oaths as jurors to follow the Court's instructions.

---

[4] The parties have not indicated how this information is to be conveyed to the jury. However, it strikes the Court that the simplest way to do so is for counsel to stipulate that Mr. Vigoreaux died on May 21, 2021, and to allow Holsum's counsel to present this stipulation orally to the jury. Alternatively, the parties could enter into a written stipulation to this effect.

### B. Julio E. Vigoreaux's Deposition Testimony About His Pride in Holsum

Next, Compass argues that Mr. Vigoreaux's testimony about his pride in his long-time employer is "[not] relevant to the facts of this case." *Compass' Mot. in Lim.* at 3. Compass writes that during his deposition, Mr. Vigoreaux "rightfully expressed pride in his long-time employer-Holsum." *Id.* However, Compass failed to provide the Court with a citation to the objected-to testimony. The Court is under no obligation to search three deposition transcripts containing over three hundred pages of testimony to see if it can locate the testimony that Compass contends is inadmissible. Furthermore, if the Court located references in Mr. Vigoreaux's deposition that could be construed as reflecting pride in Holsum, the Court would not be certain that it had captured the testimony that Compass wishes excluded.

As a generality, the Court disagrees with Compass. Testimony about Mr. Vigoreaux's pride in Holsum is relevant because this evidence tends to make it more probable that his testimony may be biased in favor of Holsum. *See Abel*, 469 U.S. at 52 ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony"). This evidence can help the jury decide how to weigh Mr. Vigoreaux's testimony in light of any bias and is therefore relevant.[5]

---

[5] Assume for the moment that Mr. Vigoreaux had express his contempt for or disgruntlement with Holsum. Certainly, Compass would be arguing that his testimony was admissible as against Holsum. The same rule should apply to Mr. Vigoreaux's expressions of pride in his employer.

9

### C. Julio E. Vigoreaux's Deposition Testimony About Holsum Helping the Public in Times of Crisis

Compass' third objection concerns Mr. Vigoreaux's deposition testimony about Holsum's helping the public in a time of crisis, specifically his reference to Holsum's response to Hurricane Maria. *Compass' Mot. in Lim.* at 3. Again, Compass provides no record citation for the objected-to testimony. The Court located no reference to Hurricane Maria in Mr. Vigoreaux's February 5, 2020, and July 3, 2020, deposition transcripts.

Mr. Vigoreaux's only reference to Hurricane Maria is in his March 10, 2020, deposition. *Julio Vigoreaux's Dep. Tr. Selected Portions for Use at Trial*, Attach. 2, *The Dep. of Julio E. Vigore[a]ux-Carreras* 25:14-26:4; 48:1-49:3 (ECF No. 158). Here, as the Court understands it, Attorney Indiano for Compass asked Mr. Vigoreaux whether Holsum's production of Cameo cookies had been affected by Maria. This is a legitimate area of inquiry because if Holsum could not produce cookies during a period for reasons other than the breach of contract, it would be relevant to damages. Mr. Vigoreaux responded directly to Attorney Indiano's inquiries and his answers are not objectionable. Contrary to Compass' position, the Court does not view Mr. Vigoreaux's responses as improper bolstering or an infusion of irrelevant testimony about Holsum's good works. Instead, Mr. Vigoreaux testified that after Hurricanes Irma and Maria, Holsum made an effort to continue production of Cameo cookies so that the cookies would continue to be available for the people of Puerto Rico. Mr. Vigoreaux's testimony on this issue is brief, not belabored, and directly responsive to Compass' questioning.

## V. CONCLUSION

The Court DENIES Compass' Motion in Limine (ECF No. 184).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of March, 2022