UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| HOLSUM DE PUERTO RICO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:18-cv-02004-JAW |
| | ) | |
| COMPASS INDUSTRIAL GROUP | ) | |
| LLC; ILLINOIS TOOL WORKS, INC.; | ) | |
| ITW FOOD EQUIPMENT GROUP | ) | |
| LLC d/b/a PEERLESS FOOD | ) | |
| EQUIPMENT; INSURANCE | ) | |
| COMPANY ABC; INSURANCE | ) | |
| COMPANY DEF; INSURANCE | ) | |
| COMPANY XYZ, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON COMPASS' AND HOLSUM'S MOTIONS FOR ATTORNEY'S FEES AND PREJUDGMENT INTEREST**

Following a two-week trial, a prevailing plaintiff and prevailing counter-plaintiff file motions for the award of attorney's fees under Puerto Rico Rule of Civil Procedure 44.1 and prejudgment interest under Rule 44.3 and Article 1069. The Court concludes that neither party is entitled to the award of attorney's fees or prejudgment interest under Rules 44.1 and 44.3 because neither party acted obstinately but awards the prevailing counter-plaintiff prejudgment interest under Article 1069 because its underlying breach of contract counterclaim was to recover a sum-certain amount of money.

## I.    PROCEDURAL BACKGROUND

On December 26, 2018, Holsum de Puerto Rico, Inc. (Holsum) filed a two-count complaint against Compass Industrial Group, LLC (Compass) alleging breach of

contract and negligence.  *Compl.* at 6-7 (ECF No. 1).  On April 2, 2019, Compass answered the Complaint and filed a breach of contract counterclaim against Holsum. *Answer to Compl. and Counterclaim* (ECF No. 18).  On May 13, 2019, Holsum filed an Amended Complaint adding ITW Food Equipment Group LLC d/b/a Peerless Food Equipment (Peerless) as a defendant and alleging breach of contract and negligence. *Am. Compl.* at 9-10 (ECF No. 36).

From March 28 to April 8, 2022, this Court presided over a jury trial to resolve Holsum's breach of contract and negligence claims against Compass and Peerless, and Compass' breach of contract counterclaim against Holsum.  *See Order* (ECF No. 241).  After two weeks of evidentiary presentations the jury found: (1) in favor of Holsum on Holsum's claim against Compass in the amount of $518,295.00; (2) in favor of Peerless on Holsum's claim against it; and (3) in favor of Compass against Holsum in the amount of $151,217.40 on Compass' counterclaim.  *Jury Verdict Form* (ECF No. 260); *J.* (ECF No. 266) (*J.*).

On April 22, 2022, Holsum filed a motion for the award of attorney's fees and prejudgment interest against Compass.  *Pet. for Award of Att'y's Fees and Prejudgment Interests* (ECF No. 274) (*Holsum's Mot.*).  On May 6, 2022, Compass filed its own motion for attorney's fees and prejudgment interest against Holsum. *Compass' Mot. for Att'y's Fees, Expenses and Pre-Judgment Interest* (ECF No. 290) (*Compass' Mot.*).  On May 16, 2022, Compass responded in opposition to Holsum's motion.  *Compass' Resp. to Holsum's Mot. for Att'y Fees, Costs, and Pre-Judgment*

*Interest* (ECF No. 297) (*Compass' Opp'n*).  Holsum did not respond to Compass' motion for attorney's fees and prejudgment interest.

## II.   ATTORNEY'S FEES

### A.   The Parties' Positions

#### 1.   Holsum's Motion

Holsum argues that it is entitled to attorney's fees because "Compass engaged in intransigent conduct that significantly complicated the . . . litigation." *Holsum's Mot.* at 2.  First, it submits that it is a "prevailing party" under Federal Rule of Civil Procedure 54 because, even though the jury reached a mixed verdict, Holsum was awarded the most damages and therefore prevailed in the "substantive part" of the litigation.  *Id.* at 8.  Citing out-of-district caselaw, it suggests that there can only be one prevailing party under the federal rules.  *Id.* at 4-5.

Second, Holsum contends that it should be awarded attorney's fees because "Compass' conduct throughout the litigation precluded any solution other than trial and caused avoidable litigation and significant expenses to Holsum."  *Id.* at 8.  Specifically, Holsum argues that (a) Compass showed up to the original Holsum site visit with a camera crew as "a deliberate attempt . . . to ambush Holsum into an overly broad and burdensome discovery . . . result[ing] in a costly exchange of motions"; (b) "Compass filed an improper motion for summary judgment that it knew, or should have known, was untimely and would not prosper"; (c) "Compass attempted to interfere with Holsum's nascent business relationship with Mondelez International by subpoenaing the latter on 3 occasions"; (d) "Compass filed various frivolous motions in limine seeking to strike Holsum's damage evidence"; (e) Compass

attempted to "revive and relitigate" issues following the death of Mr. Julio Vigoreaux; and (f) "Compass engaged, throughout the litigation, in an unreasonable crusade for attorney's fees that it never obtained." *Id.* at 9-10.

Third, Holsum avers that "Compass summarily refused a reasonable settlement offer that would have been more favorable to it than the Judgment, instead adopting an obstinate position leaving Holsum no choice but to go to trial." *Id.* at 10. Holsum notes that it made a settlement offer "whereby the parties would return to their original positions and bear their own attorney costs: Compass would return the $435,673 it received from Holsum and, in exchange, Holsum would return the machine." *Id.* at 11. Holsum maintains that Compass "refu[sed] to engage in good-faith negotiations" and obtained a less favorable judgment than if it had settled with Holsum. *Id.*

Holsum submits that these factual circumstances point toward Compass being "obstinate" and therefore liable for prejudgment interest and attorney's fees. *Id.* at 6. To this end, Holsum further contends that the Court should calculate its attorney's fees according to the lodestar method by multiplying the applicable hourly rate by the number of hours worked. *Id.* at 7.

### 2.    Compass' Opposition

In opposition Compass argues that Holsum improperly "claims that it prevailed on its contract theory" but "ignores its negligence claim." *Compass' Opp'n* at 1. It submits that "[t]he jury found that *Compass* prevailed on its contract claim" reasoning that although "competing contract claims do not always constitute a zero-sum game, the competing claims here involved the same subject matter." *Id.*

Compass argues that it would have been "internally inconsistent" for the jury to award Holsum and Compass damages for the same breach of contract claim, and as a result, "the jury's award to Holsum is consequently based solely upon its negligence claim." *Id.* at 2.  Compass also notes that Holsum did not itemize its billing records or "seek[] any less than the entirety of its incurred costs . . . even though it clearly failed to recover the entirety of the damages it demanded." *Id.*

As to Holsum's obstinacy claim, Compass submits that because it was awarded damages on its contract claim "actually it was *correct*," not obstinate.  *Id.* at 3 (emphasis in original).  Responding to each of Holsum's allegations of obstinate conduct, Compass says Holsum "fails to support these contentions with declarations of counsel or itemize the attorney's fees it alleges arose from these instances." *Id.* at 4.  Compass counters that (a) "the Court ultimately approved Compass' request to measure the cookies as they left the PT2 and ultimately permitted Compass and Peerless to record the operation of the PT2" and that "the measurement of the cookies was indeed an issue discussed at length during trial, and the jury viewed several videos obtained during the February 2020 visit as a result of the Court's order;" (b) Holsum's argument that Compass improperly sought summary judgment is "specious" because "Compass prevailed on the only alleged fact in question—installation—at trial and this effectively closed the loop on the issue presented by the summary judgment motion"; (c) the subpoena for Holsum's product quality records was not "an attempt to interfere with its business relations with Mondelez" because, as was made clear at trial, "such records would have contained measurements of

cookies to verify whether Holsum was or was not capable of producing cookies within its contractual specifications with Compass," the Court did not prevent Compass from subpoenaing Mondelez, and the Court made no finding that Compass harassed Mondelez; (d) Holsum "failed to initially identify [Ernesto] Morales in either its initial disclosures or its written discovery responses, and concealed [exhibits] from Defendants until the end of [Mr.] Vigoreaux's deposition" and although "the Court ultimately rejected Compass' objections, they were not substantially unjustified in a way that would evidence obstinacy or demand a penalty"; (e) Compass' decision to "preserv[e] its objection to the admission of the [Holsum's damages calculations] through a motion in limine . . . is not 'obstinacy' as much as it is zealous representation and preservation of possible error for review"; (f) Holsum's argument that Compass "unreasonably launched a 'crusade' for attorney's fees" is conclusory because "Holsum does not itemize expenses related to this 'crusade' or contend that it expended any specific amount of hours defending against these claims" and "[t]he jury appears to have vindicated Compass' view that Holsum itself was obstinate in refusing to pay"; and (g) Holsum's account of its settlement offer is a "wild misrepresentation of what actually occurred" which was that "at the eleventh hour and without conferring with the Defendants" Holsum "sought the assistance of the Court in mediating a resolution to the case . . . [which] arose after months of silence with regard to settlement." *Id.* at 4-6.

Regarding Holsum's settlement offer just prior to trial, Compass explains that "Holsum first proposed a resolution that would have required Compass and its

attorneys to assess the condition of the tray loader" because the offer "came with absolutely no assurances as to its condition, and likewise no photos, and no contemporaneous videos." *Id.* at 6.  Compass states that Holsum never made such an overture weeks or months earlier and it amounted to "an offer that would have required Compass to abandon trial preparation in the *hope* that its tray loader was in anything approaching a condition making it viable for use or resale" and would have taken "several days [to] determin[e] that the condition of the tray loader was unacceptable, leaving it in a weakened position from a trial preparation standpoint." *Id.* at 6-7 (emphasis in original).  Compass also asserts that it never "counter[ed] with a demand of $450,000 in cash *and* then a demand to continue to a jury trial on the counterclaim" but instead presented an alternative "that Holsum would pay Compass' contract claims (something ultimately awarded by the jury) and the parties would submit the question of attorney's fees to the Court for resolution."  *Id.* at 7 (emphasis in original).  Finally, Compass notes that Holsum's motion for attorney's fees "provides suspiciously round numbers not reflective of contemporaneous time keeping, and [not] supporting itemization" and contains "no allegation that the rates charged are reasonable in light of counsels' experience."  *Id.* at 8.

Next, Compass asserts that "[t]he trial was replete with evidence upon which the jury could have returned a verdict for Compass" and points to evidence in the record that "Holsum's PT2 machine was unable to make uniform cookie sandwiches within the contractual specifications on a consistent basis" which "interfered with the operation of the tray loader."  *Id.*  Compass explains that "[a]t trial, Peerless' expert,

7

Jason Switzer, agreed that Compass did not have an adequate product flow to integrate the trade loader prior to its November removal from the line" and "Ronnie Smith testified [that] no tray loader on the planet could have processed and packaged cookies produced with this rate of scrap." *Id.* at 9. In sum, Compass submits its "defense of this case was not only appropriate, but robust, even if not unassailable." *Id.*

### 3. Compass' Motion

In its own motion for attorney's fees, Compass submits that it is entitled to attorney's fees "in light of Holsum's obstinate and temerarious behavior" and the jury's verdict "branded Holsum's refusal to pay Compass' invoices a breach of contract." *Compass' Mot.* at 3-4. Compass points to Holsum's acknowledgment that "the functioning of its PT2 machine inhibited the operation of the tray loader" and Miguel Pereira's admission "that he agreed with Ronnie Smith that Compass should leave the bakery and come back at the completion of the work on the PT2, because as of November of 2017, it 'was difficult for the machine to work.'" *Id.* at 4. Compass argues that "[d]espite knowing and *admitting* that their PT2 inhibited the operation of the Compass tray loader, [Holsum] insisted they had a right to disregard Compass' invoices" which is "obstinance." *Id.* at 4-5.

Compass argues that not only was "Holsum's decision to withhold payment obstinate" but so was "its failure to be forthright with Compass about that decision." *Id.* at 5. Compass explains that Mr. Pereira "contradicted himself about his timely receipt of the invoices" and later admitted that "he had received the service invoice emails dated August 24, November 6, and November 9 of 2017." *Id.* Compass also

says that "Holsum's refusal to pay the 10% owing on the tray loader is even more egregious and obvious because this was an Ex Works transaction: meaning that title passed to Holsum in Georgia before the tray loader was shipped to Puerto Rico." *Id.* at 6.  It says that "Holsum simply used its superior economic position to deny this payment to Compass with zero justification" and "Holsum had opportunities to save Compass this enormous cost at multiple stages." *Id.*  Compass concludes by urging the Court to calculate its reasonable attorney's fees using the lodestar method. *Id.* at 10-12.

### B.   Legal Standard

"Where, as here, the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law, in this case Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure." *Fazio v. James River Ins. Co.*, No. 20-1074 (MEL), 2021 U.S. Dist. LEXIS 108087, at *6 (D.P.R. June 7, 2021) (quoting *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010)).  Rule 44.1 provides:

> (d) Attorney's Fees. — In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct.

P.R. Laws Ap. tit. 32A, § III, Rule 44.1.  The Puerto Rico attorney's fee provision seeks "to impose a penalty upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." *Fazio*, 2021 U.S. Dist. LEXIS 108087, at *6-7 (quoting *Feliciano Rivera v. Pina Nieves*, 292 F. Supp.

3d 560, 567 (D.P.R. 2018)); *see also Suero-Algarín v. San Pablo Caguas*, No. 14-1508 (SCC), 2020 U.S. Dist. LEXIS 260963, at *3 (D.P.R. Nov. 23, 2020) (explaining that a prevailing party is not *carte blanche* entitled to attorney's fees absent a finding of obstinacy).

For a court to make a finding of obstinacy, "a litigant [must have] been 'unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay.'" *Fazio*, 2021 U.S. Dist. LEXIS 108087, at *7 (quoting *Flovac, Inc. v. Airvac, Inc.*, No. 12-1348, 2017 U.S. Dist. LEXIS 48081, at *2 (D.P.R. Mar. 30, 2017)). "The offending party's conduct, at the very least, must have started 'a litigation that could have been avoided,' unnecessarily delayed the proceedings, or forced the other party to 'embark on needless procedures.'" *Id.* (quoting *Flovac, Inc.*, 2017 U.S. Dist. LEXIS 48081, at *2). "Essentially, a party is obstinate if it 'engages in actions which (a) make necessary litigation which could have been avoided, (b) prolongs the litigation unnecessarily, or (c) requires the other party to incur expenses in the pursuit of avoidable tasks.'" *C-Fuels v. Puma Energy Caribe LLC*, No. 19-2057 (ADC), 2021 U.S. Dist. LEXIS 198515, at *3 (D.P.R. Feb. 25, 2021) (quoting *Newell Puerto Rico, Ltd. v. Rubbermaid, Inc.*, 20 F.3d 15, 24 (1st Cir. 1994)).

Courts should consider "(1) the complexity of the issues, the clarity of the law, and the disposition of the litigants[,] in short, the 'personality' of the case; (2) the delay and stubbornness in discovery, including a disregard for court orders; (3)

temerity in settlement negotiations; and (4) the novelty of the claim." *Fazio*, 2021 U.S. Dist. LEXIS 108087, at *7 (quoting *Feliciano Rivera*, 292 F. Supp. 3d at 567); *see also C-Fuels*, 2021 U.S. Dist. LEXIS 198515, at *2-3. "'Obstinacy is to be judged in light of the overall circumstances of the particular case,' but generally includes conduct such as 'denying all liability in answering a complaint, where the defendant later admits liability; raising inapplicable defenses; denying all liability when only the amount of damages sought is contested; and denying a fact, knowing it is true.'" *Fazio*, 2021 U.S. Dist. LEXIS 108087, at *7-8 (quoting *Inducol S.A. v. Gutierrez*, No. 12-2053, 2013 U.S. Dist. LEXIS 153044, at *8 (D.P.R. Oct. 23, 2013)).

"Under Puerto Rico law, attorneys' fees are not meant to compensate a litigant for the total costs incurred in the law suit," *IOM Corp.*, 627 F.3d at 452, but instead "must be commensurate to that amount which in the opinion of the court, reasonably represents the value of th[e] [legal] services, considering the degree of obstinacy [or frivolousness] and other circumstances of the case." *Id.* (quoting *Asociación de Condóminos v. Trelles Reyes*, 20 P.R. Offic. Trans. 599, 605, 120 P.R. Dec. 574, 1988 Juris P.R. 25 (1988)); *see also C-Fuels*, 2021 U.S. Dist. LEXIS 198515, at *4 ("It is well settled that '[t]he Puerto Rico rule on obstinacy was not designed as a premium to successful litigants, but rather as a penalty to be imposed on those litigants whose conduct in pursuing a course of action borders on unreasonable pertinaciousness'" (quoting *Reyes v. Banco Santander de P.R., N.A.*, 583 F. Supp. 1444, 1446 (D.P.R. 1984)).

### C.     Discussion

Although Holsum argues that it is the "prevailing" party to the litigation, *see Holsum's Mot.* at 8, the Court does not need to resolve whether the attorney's fee provision of Rule 44 of the Puerto Rico Rules of Civil Procedure permits only one "prevailing" party to recover because neither Holsum nor Compass has demonstrated that the other acted obstinately in defending or prosecuting its legal claims. As the Court explained in its August 11, 2022, order on Peerless' motion for attorney's fees, the "personality" of this case does not warrant a finding of obstinacy by either Holsum or Compass. *Order on Peerless' Mot. for Att'y's Fees* (ECF No. 317). In its August 11, 2022, order, the Court wrote:

> The facts, though complicated, were well within common understanding, the witnesses were well-spoken with good recollections of the events, the law was reasonably straightforward, and each party was represented by extremely able, effective, and experienced attorneys. In short, the Court viewed the lawsuit itself and the inability of the parties to resolve it to be a function of the parties' substantially differing perspectives of the contested facts and the ultimate resolution of the dispute by a civil jury was what the federal courts are constitutionally designed to provide.

*Id.* at 26-27.

Although both Holsum and Compass diligently and vigorously prosecuted and defended this case, zealous representation is not obstinate or unreasonably pertinacious and does not justify a penalty in the form of an award of attorney's fees. *See Suero-Algarín*, 2020 U.S. Dist. LEXIS 26093, at *5-6 (explaining that "parties engag[ing] in a tooth and nail battle which dates back [six years]" does not justify departure "from the well-established principle that each party must bear their own attorney's fees" absent more specific evidence of frivolousness or obstinacy);

12

*Bermudez v. Berrios*, No. 15-1034 (CVR), 2020 U.S. Dist. LEXIS 61160, at *5 (D.P.R. Apr. 6, 2020) (denying a plaintiff's motion for attorney's fees for a "relatively straightforward case" where "[t]here was no needless prolongation of the litigation or a misuse of time" and where "the Court [found] that both parties worked diligently in prosecuting their respective cases and both had experts and witnesses prepared for trial). Given that this was a close case, neither party acted obstinately in defending itself and advancing its claims, both before and during trial.

### 1.      Holsum's Arguments for Attorney's Fees

Holsum raises six specific instances that it says demonstrate "how Compass's intransigence unduly prolonged" the litigation. *Holsum's Mot.* at 8. The Court addresses each in turn.

First, Holsum alleges that "Compass showed up with an unannounced camera crew" to the parties' "original October 2019 site inspection of Holsum's production plant" which "was a deliberate attempt by Compass to ambush Holsum into an overly broad and burdensome discovery" which "resulted in a costly exchange of motions." *Id.* at 8-9. The record reflects that the parties initially agreed that depositions and an inspection of Holsum's facilities and equipment were scheduled for October 22-25, 2019. *Joint Initial Scheduling Conference Mem.* at 29 (ECF No. 54). On October 29, 2019, Compass filed a motion explaining that, pursuant to Federal Rule of Civil Procedure 34(a)(2), it had the right to "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it," *Mot. Requesting Ct. Order Approving Notice of Inspection of Holsum Premises Pursuant to Rule 34* at 2 (ECF No. 57), but that "[u]pon arrival at the Holsum facilities, Holsum's in-house

counsel . . . insist[ed] that the parties could not take any photographs or videos with their own equipment" and "that the parties could only depend [upon] a photographer that [Holsum] would supply." *Id.* Compass attached a formal notice of inspection pursuant to Rule 34 to its motion. *Id.*, Attach. 1., *Notice of Inspection Pursuant to Rule 34* at 1-2.

Holsum opposed Compass' motion and explained that it provided Compass with its "Visitor Policy" fifteen days before the inspection and neither Peerless nor Compass objected to it and "Compass (nor Peerless) *never* served Holsum with a formal notice of inspection, nor specified in any other way the purpose or even *the scope* of their proposed inspection." *Opp'n to Co-Def. Compass' 'Mot. Requesting Ct. Order Approving Notice of Inspection of Holsum's Premises Pursuant to Rule 34'* at 2 (ECF No. 59) (emphasis in original). In its reply, Compass explained that it complied with Rule 26 "in attempting to resolve the inspection problem" and filed a prospective Notice of Inspection, and that "the parties met to discuss the initial inspection issues, but no resolution could be reached." *Reply to Holsum's Opp'n for Ct. Approved Notice of Inspection of Holsum Premises Pursuant to Rule 34* at 2 (ECF No. 65). Compass also noted that because "Compass is being sued by Holsum for allegedly not providing machinery compatible with [its] production process," an inability to inspect the facility "would prevent Compass from being able to adequately defend this suit." *Id.* at 2. On November 21, 2019, then-Magistrate Judge Carreño-Coll resolved this discovery dispute and explained that Compass and Peerless would be permitted to perform an inspection, but its scope would be limited to the sandwiching machine and

tray loader; the defendants could take measurements of the Cameo Cookie product; and the parties would be allowed to take pictures and videos of the two machines. *Mins. of Proceedings* (ECF 76).

Although Compass filed its Rule 34 notice of inspection on October 29, 2019, the day the inspection was supposed to occur and fifteen days after Holsum provided the Defendants with its visitor policy, Compass did not act obstinately or in a manner intended to unnecessarily prolong the litigation and incur avoidable expense.  First, the record does not suggest that Compass filed the motions to intentionally delay the inspection but rather because there was a genuine discovery dispute between the parties that required resolution by the court.  This is evidenced by the fact that the parties had attempted to independently resolve this inspection issue but were unable to reach an agreement, *Reply to Holsum's Opp'n for Ct. Approved Notice of Inspection of Holsum Premises Pursuant to Rule 34* at 3, and there appeared to be a genuine issue as to whether Compass was required to file a formal Rule 34 notice of inspection when the parties had already agreed in their joint scheduling conference memorandum that an inspection would be held in October 2019.

Furthermore, Compass' request for the inspection was reasonable given the nature of the litigation.  The trial record, which includes extensive testimony on the size, shape, and quality of the cookies, and differences in the quality and functioning of the sandwiching machine between August 2017 and February 2020, demonstrates that the information gathered at the inspection was an essential component of Compass' defense and counterclaim.  As such, Compass' request was not a pernicious

attempt to incur costs or delay litigation but an effort to ensure that it had the information necessary for it to defend itself at trial.  This is further supported by the Magistrate Judge's ultimate determination that an inspection, including the taking of measurements and photography/videography, was justified and permitted as part of discovery.

The mere fact that the parties fiercely contested the inspection does not suggest that Compass acted obstinately or needlessly forced Holsum to incur expense or undergo unnecessary procedures.  This is especially true given the likelihood that Compass itself incurred the greater cost from its decision to file these motions, as Compass representative Ronnie Smith and co-counsel Dylan Wilbanks already incurred the cost of flying to Puerto Rico for an inspection that did not materialize until several months later.  *Requesting Ct. Order Approving Notice of Inspection of Holsum Premises Pursuant to Rule 34* at 2.

Second, Holsum contends that Compass "filed an improper motion for summary judgment that it knew, or should have known, was untimely and would not prosper."  *Holsum's Mot.* at 9.  On November 1, 2019, Compass filed a motion for summary judgment on its counterclaim arguing that there were no material disputes of fact as to the debt owed to it.  *Mot. for Summ. J. on Counterclaim for Debt Owed* at 3 (ECF No. 62).  On June 11, 2020, the Court denied Compass' motion for summary judgment because, although the parties agreed on nearly every fact in the record, they disputed *why* Holsum failed to pay the outstanding debt.  *Op. & Order* at 4 (ECF No. 90) (emphasis in original).  The Court concluded that there was a "genuine and

material issue of fact as to whether the tray loader machine was installed at Holsum's facility, and if it is not, who is at fault for the breach of contract regarding the same." *Id.* at 5.

Although the Court ultimately denied Compass' motion for summary judgment and concluded that there were material issues of fact for resolution by a factfinder, that, alone, does not justify an obstinacy finding. Summary judgment is a routine part of civil practice and given the parties' agreement on the facts, it was not unreasonable for Compass to seek resolution of the counterclaim on summary judgment. The record does not suggest that Compass filed its motion for summary judgment to delay resolution of the case or to force Holsum to incur additional costs in opposing the motion for summary judgment. Filing a motion for summary judgment is hardly the type of unreasonably adamant, unnecessary action that necessitates a finding of obstinacy and is well within the parameters of acceptable litigation practice.

Third, Holsum argues that "Compass attempted to interfere with Holsum's nascent business relationship with Mondelez International by subpoenaing the latter on 3 occasions" and "Mondelez was forced to appear in the case to quash Compass' subpoenas." *Holsum's Mot.* at 9. The Court rejects this argument as evidence of obstinate behavior justifying the award of attorney's fees because the record does not support the contention that Compass subpoenaed Mondelez to interfere with Holsum's business relationship with the company. On January 13, 2020, the Magistrate Judge issued an order requesting that Compass redraft the subpoena so

as not to "unduly burden Mondelez or seek confidential or protected documents." *See Disc. Order* (ECF No. 85).  The Magistrate Judge's decision to allow Compass to reframe the subpoena suggests that the Court did not view the information requested in the subpoena to be frivolous, even if the document was initially drafted too broadly.

Furthermore, the information Compass sought—information related to cookie specifications and quality assurance records—was reasonably related to Compass' defense that the tray loader's problems were caused by the cookies themselves, which were not of the right size and quality.  At trial, Peerless witness Jason Switzer testified that many of the cookies coming out of Holsum's oven were "coming in at 73, 74, 75 millimeters" which was bigger than the expected 68 millimeters, and that a difference of seven millimeters is "a lot . . . for a precise piece of equipment." *Opp'n to ITW Food Equipment Group, LLC d/b/a Peerless Food Equipment's ("Peerless") Mot. for Att'y's Fees at Docket No. 270* (ECF No. 301), Attach. 1, *Excerpt of Jury Trial Proceedings, Witness Jason Switzer* at 59:9-13 (*Switzer Tr.*).  However, Holsum maintained that the cookies were always within specification "because the dimensions are determined by the mold and that mold is the one [Holsum has] always used." *Jury Trial Proceedings-Day 4* at 86:10-14 (ECF No. 277) (*Mar. 31, 2022, Tr.*). Mr. Pereira testified that the Holsum Quality Assurance Department took measurements of the cookies several times throughout the day, *id.* at 23:14-19, which counsel for Compass asserted would likely be helpful for the jury to have in determining whether the Holsum cookies were of appropriate size and condition, given that Compass and Peerless were asserting that they were not.  *Id.* at 23-26.

The size and quality of the cookies that Holsum was to provide to Mondelez were therefore central to the trial.

Moreover, because Compass' defense was, in part, based on the size of the cookies, and because Mr. Smith acknowledged that he had "seen Mondelez specs in other bakeries," *Opp'n to Compass Industrial Group, LLC's ("Compass") "Mot. for New Trial Under F.R.C.P. 59(a)(1)(A) or in the Alternative Requesting Remittitur" (DKT. No. 288) and "Mot. for J. as a Matter of Law Against Holsum" (DKT. No. 289),* Attach. 7, *Further Jury Trial Proceedings* at 154:22-23 (ECF No. 313) (*Apr. 5, 2022, Tr.*), despite Holsum's assertion that it could not share this information with Compass because of Mondelez, it was reasonable for Compass to seek out these records. The subpoenas were therefore a legitimate mechanism for Compass to get the information it believed it needed to mount a strong defense.

Fourth, Holsum avers that "Compass filed various frivolous motions in limine seeking to strike Holsum's damage evidence," which "provoked an exceedingly costly crossfire of no less than 10 motions." *Holsum's Mot.* at 10. On January 26, 2021, Compass filed three motions in limine. *See Mot. to Strike and Mot. in Lim. Regarding Holsum's Proposed Witness Ernesto Morales* (ECF No. 110); *Mot. in Lim. to Exclude Pl.'s Damages Calculations as Evid. in This Case* (ECF No. 111); *Mot. in Lim. to Exclude Pl.'s Expert Opinions on Damages* (ECF No. 112). On March 25, 2021, the Court denied all three motions in limine. *Op. & Order* (ECF No. 142). Although the Court denied Compass' motions in limine, Compass zealously defended the case by reasonably attempting to exclude evidence. None of Compass' arguments was

frivolous or unreasonable, and there was no indication that it was filing these motions to increase litigation costs or delay the proceedings. Compass' motions in limine are well within the realm of reasonable litigation activity in anticipation of trial.

Fifth, Holsum submits that "Compass attempted to use the procedural window afforded to it by the death of Mr. Julio Vigoreaux to revive and relitigate" the damages issue. *Holsum's Mot.* at 10. Following the death of Holsum witness Julio Vigoreaux, the Court ordered the parties to designate portions of Mr. Vigoreaux's deposition for trial. *Report of Final Pretrial Conference and Order* at 2 (ECF No. 156). On October 1, 2021, Compass objected to Holsum's designations on (1) hearsay and personal knowledge grounds, (2) under the parol evidence rule; (3) due to improper questioning by multiple attorneys; and (4) due to improper damages testimony under Federal Rule of Evidence 1006. *See Objs. to Holsum's Designations in Vigoreaux Dep.* (ECF No. 182). In resolving the proposed deposition designations, the Court noted that it had already resolved the damages testimony in its March 25, 2021, order on Compass' motions in limine, and explained that the Court would not permit Compass to relitigate issues already resolved in this case. *See Order on Parties' Pending Dep. Designations* at 16 (ECF No. 236).

Although the Court summarily rejected Compass' efforts to renew its Rule 26 and Rule 1006 arguments, this alone does not justify the award of attorney's fees under the circumstances. Compass' objections to Holsum's designations did not needlessly prolong the proceedings or force Holsum to incur additional expenses. Compass made a handful of other objections to the deposition designations beyond its

Rule 26 and 1006 arguments and Holsum would have been required to respond to those objections even if Compass had not renewed its arguments on damages. Additionally, the Court denied Compass' motions in limine under the presumption that the damages evidence would be offered at trial through live testimony rather than by deposition. *See Op. & Order* at 12 (ECF No. 142) ("As lay witness, Mr. Vigoreaux Carreras may testify about matters within his personal knowledge. He is an employee of Holsum and, therefore, may have personal knowledge of how the events unfolded and the costs incurred. . . . If a proper foundation is laid, Mr. Vigoreaux Carreras may testify as to his personal knowledge"). It was therefore not "unreasonably adamant" under the circumstances for Compass to renew its arguments in light of the reality that Mr. Vigoreaux's testimony would come in through his deposition, rather than as live testimony. In this context, Compass' objections do not justify awarding Holsum attorney's fees, especially as it is the only instance Holsum has raised where Compass renewed an already-litigated issue.

Finally, Holsum argues that Compass acted obstinately by engaging "in an unreasonable crusade for attorney's fees that it never obtained." *Holsum's Mot.* at 10. Holsum provides no argument or citation supporting its assertion that a party's pursuit of attorney's fees is in itself obstinate and unreasonable. The Court therefore rejects this argument.

In addition to these six arguments, Holsum argues that Compass acted obstinately because it refused to settle the case, which in hindsight would have given Compass a more favorable outcome. The Court rejects this argument. First, the

proposition that Compass acted unreasonably because the jury awarded $518,295 in damages when Compass could have settled the case for $435,673, the amount Holsum paid for the tray loader, *Holsum's Mot.* at 11, is flawed because this was an extremely close case, and the jury could have reasonably concluded that Compass was not liable for negligence or breach of contract. It was therefore not unreasonable for Compass to take its chances and bring the case to trial under the belief that the jury could, and would, find in its favor. That a party receives a less favorable outcome at trial does not suggest obstinate conduct when the jury could reasonably find in favor of either party. *See Crawford v. City of Quincy*, No. 99-1312, 2000 U.S. App. LEXIS 2288, at *10-11 (1st Cir. 2000) ("[I]n awarding fees to a prevailing defendant, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation") (internal citations and quotation marks omitted).

Additionally, Compass' explanation as to why it did not accept Holsum's offer does not reflect obstinance. Compass explained that the final settlement offer proposed that Holsum would return the tray loader to Compass, and Compass would return the money Holsum paid, but Holsum did not guarantee the condition of the tray loader. *Compass' Opp'n* at 6. Compass explained that it would have had to verify the condition of the tray loader before accepting the offer, which would take away from Compass' trial preparation given the proximity of the offer to the trial date. *Id.* at 6-7. In light of the fact that the issues presented to the jury were extremely close

22

and the jury could have reasonably entered a verdict for either party, it was not unreasonably adamant for Compass to have perceived that, in the absence of an assurance as to the condition of the tray loader, it was more favorable for it to proceed to trial.  It was not obstinate for Compass to reject settlement and rely on a jury to resolve these disputed issues of fact.

Compass did not act obstinately in defending Holsum's claims or prosecuting its counter claims.  Holsum is not entitled to reasonable attorney's fees.

### 2.   Compass' Arguments for Attorney's Fees

To the extent that Compass argues that it is entitled to the award of attorney's fees against Holsum, the Court rejects this argument.  Compass premises its argument on the notion that Holsum acted obstinately when it decided not to pay Compass for the final 10% owed on the fabrication contract and when it also failed to pay services invoices.  *Compass' Mot.* at 5-6.  Compass also points to the fact that Mr. Pereira was not honest about Holsum's decision to pay in his testimony at trial.  *Id.* at 5.  Compass' argument is flawed because it argues obstinacy based on alleged facts occurring before the initiation of this litigation.  Rule 44 and the award of attorney's fees is intended to address obstinate conduct *in litigating the case.  See Fazio*, 2021 U.S. Dist. LEXIS 108087, at *6-7; *see also Prestige Capital Corp. v. United Sur. & Indem. Co.*, 245 F. Supp. 3d 349, 357 (D.P.R. 2017) (explaining that Rule 44 addresses obstinate conduct from the time of filing through the litigation).  Compass' allegations that Holsum acted obstinately in failing to pay Compass do not address the parties' handling of the litigation, but instead argue the facts of the case resolved at trial by a jury.

The Court denies Compass' motion for the award of reasonable attorney's fees and prejudgment interest.

## III.    PREJUDGMENT INTEREST

In addition to attorney's fees, both parties seek prejudgment interest on the damages awarded.

### A.    The Parties' Positions

#### 1.    Holsum's Motion for Prejudgment Interest

Holsum argues that it is entitled to prejudgment interest because Compass acted obstinately during the course of litigation. *Holsum's Mot.* at 5-6. It relies on the same arguments made in support of its request for attorney's fees.

#### 2.    Compass' Motion for Prejudgment Interest

Compass asserts that "Article 1169 (formerly 1061) of the Puerto Rico Civil Code specifically provides that the indemnity for losses and damages due a debtor's default to comply with his or her obligation to pay an amount of money shall consist in the payment of the legal interest." *Compass' Mot.* at 2. It says that because it "prevailed in its counterclaim for breach of contract" it is entitled to "the interest at the applicable rate computed from April 2, 2019, when the counterclaim was filed." *Id.* As a result, Compass requests "interest on the $151,217.40 at the legal rate of interest (6.25% per the Office of the Commissioner of Financial Institutions' chart of Interests Applicable to Judicial Sentences . . .) from April 2, 2019, [which] is $29,259.53 and continues to accrue at a per diem rate of $25.8934." *Id.* at 3. It also requests "[i]nterest on the same amount calculated from the date of default, December 9, 2017 (thirty days after the date of the final service invoice . . .) [in the

sum of] $41,688.36." Compass contends that is the appropriate date for calculating interest "if the Court finds that the Plaintiff was obstinate in refusing to pay the invoices." *Id.*

### B.  Legal Standard

As with the award of attorney's fees, the award of prejudgment interest in diversity cases is governed by state law. *See Ocasio v. Perfect Sweet Inc.*, No. 16-2012 (BJM), 2018 U.S. Dist. LEXIS 124598 at *14 (D.P.R. July 23, 2018); *see also P.R. Highway & Transp. Auth. v. Redondo Constr. Corp. (In re Redondo Constr. Corp.)*, 820 F.3d 460, 464 (1st Cir. 2016) ("When state-law claims . . . are adjudicated by a federal court, prejudgment interest is normally a matter of state law").

Puerto Rico law provides two avenues for the award of prejudgment interest. The first is Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure, which states:

> [T]he court will impose on the party that has acted rashly the payment of interest at the rate fixed by the [Finance Board of the Office of the Commissioner of Financial Institutions] . . . which is in effect at the moment the judgment is pronounced, from the time the cause of action arises in every case of collection of money and from the time the claim is filed in actions for damages until the date judgment is pronounced, to be computed on the amount of the judgment.

P.R. Laws Ap. tit. 32A, § III, Rule 44.3(b); *see also Intimate Fashions, Inc. v. El Telar, Inc.*, 570 F. Supp. 2d 225, 231 (D.P.R. 2008). As with Rule 44.1, the "primary purpose of [Rule 44.3] is 'to impose a penalty upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts and inconveniences of litigation.'" *Id.* (citation omitted). The Court applies the same obstinacy standard under Rule 44.3 for the award of prejudgment interest as it does under Rule 44.1 for

the award of attorney's fees.  *Id.; see also Dopp*, 38 F.3d at 1252; *Fajardo Shopping Ctr. of P.R., Inc. v. Sun All. Ins. Co.*, 167 F.3d 1, 14 (1st Cir. 1999).

The second avenue for prejudgment interest is Article 1069 of the Puerto Rico Civil Code, which provides that a party is entitled to "indemnity for damages" if a debtor is defaulted on an "obligation consist[ing] in the payment of a sum of money."[1] 31 L.P.R.A. § 3025.  "[T]he indemnity for losses and damages, should there not be a stipulation to the contrary, shall consist in the payment of the interest agreed upon, and should there be no agreement, in that of the legal interest." *Id.*  This District has further explained:

> The creditor of a sum of money who claims an indemnity because of a delay in payment is not required to prove that such delay caused him a detriment; he has the right to receive interest for the delay "without being required to justify any loss."  (Citations omitted.)[.]  The reason for this is that he who expects his money on a certain day always suffers a detriment when he must wait for payment.  Money being a fruitful thing, easy to place, the creditor is always deprived of the revenue of his capital.

*Reyes*, 583 F. Supp. at 1447 n.4.  Under this provision of Puerto Rico law, "interest has to be awarded from the moment the complaint is filed until judgment is entered even when no stipulation has been made." *Colon v. Blades*, 717 F. Supp. 2d 175, 185 (D.P.R. 2010).

---

[1]    "In [the case of Rule 44.3], interest should be considered automatically part of the judgment, by express provision of law.  However, [Article 1061] interest is not in the same category.  It is not an integral part or inherently inseverable from the principal obligation, but is considered an independent indemnity for damages, by way of penalty, for default in payment."

### C.      Discussion

#### 1.      Holsm's Request for Prejudgment Interest

Holsum asserts that, under Rule 44.3[2] it is entitled to prejudgment interest because Compass acted obstinately in litigating the case.  As the Court concluded in its discussion on the parties' motions for attorney's fees, Compass did not act obstinately.  In the absence of obstinate conduct, the award of prejudgment interest is inappropriate.  The Court denies Holsum's motion for prejudgment interest.

#### 2.      Compass' Request for Prejudgment Interest

Compass raises two arguments for the award of prejudgment interest: (1) Rule 44; and (2) Article 1069.  Because the Court has already concluded that Holsum did not act obstinately in litigating this case, Compass cannot obtain prejudgment interest under Rule 44.

However, prejudgment interest under Article 1069 is appropriate in this case. Compass' breach of contract claim is based on Holsum's failure to pay the final ten percent due on the fabrication of the tray loader and its failure to pay three invoices. *Answer to Compl. & Counterclaim* at 13 (ECF No. 18) (*Answer & Counterclaim*). Compass alleged that, in total, Holsum failed to pay $153,017.40.  *Id.* at 13.  Compass' counterclaim was therefore based on Holsum's alleged failure to pay a sum of money, which means that Compass is entitled to prejudgment interest on the damages awarded at trial for Holsum's breach of its contractual obligation to pay.  *See JIF*

---

[2]      Holsum does not seek prejudgment interest pursuant to Article 1069, nor would that provision apply.  Holsum's claims for breach of contract and negligence against Compass were not for Compass' failure to pay a sum of money, as required for prejudgment interest under Article 1069, but rather because the "tray loader machine proved to be defective and ill equipped to function pursuant to the Compass Contract's terms and conditions."  *Am. Compl.* at 8 (ECF No. 36).

*Trading LLC v. Mizrahi*, No. 21-1170 (FAB), 2021 U.S. Dist. LEXIS 226952, at *10-11 (D.P.R. Nov. 23, 2021) (awarding prejudgment interest on a defendant's failure to pay $119,819.00 for jewelry sold and delivered); *Ocasio*, 2018 U.S. Dist. LEXIS 124598, at *15 (awarding prejudgment interest on damages awarded for the failure to make loan interest payments); *Colon*, 717 F. Supp. 2d at 186 ("[A]lthough payment of interest was not expressly stipulated in the . . . Contract, [the defendant] is entitled to prejudgment interest from the date the amended cross-claim was filed until judgment is entered" because the cross-defendant failed to make scheduled payments on the balance owed under the terms of the contract).

Because the Court has already rejected Compass' obstinacy argument, prejudgment interest is calculated from the date of filing, in this case, April 2, 2019. *See Answer & Counterclaim* at 16; *see also* P.R. Laws Ap. tit. 32A, § III, Rule 44.3(b). Furthermore, because the parties have not stipulated to the prejudgment interest rate to be applied, the Court applies the default interest rate set by the Finance Board of the Office of the Commissioner of Financial Institutions at the time of Holsum's default, which was 6.25% per annum.[3]  Oficina del Comisionado de Institutciones Financieras*, Intereses Aplicables a Sentencias Judiciales*, https://ocif.pr.gov/Consumidores/Documents/Tabla%20de%20Intereses%20Aplicable s%20a%20Sentencias%201985%20al%202022.pdf (last visited Aug. 10, 2022).  The

---

[3]      Article 1069, unlike Rule 44.3, does not explain whether the interest rate to be applied is that which is in existence at the time of the default, or the rate at the time judgment is entered.  *See* P.R. Laws Ap. tit. 32A, § III, Rule 44.3(b) (explaining that the applicable interest rate is that which is in existence at the time the court enters the judgment).  However, where this District has applied Article 1069, the district court has awarded interest based on the applicable rate at the time the party defaulted on the payment.  *See JIF Trading LLC*, 2021 U.S. Dist. LEXIS 226952, at *10-11.

Court will not make the prejudgment interest calculation and will instead leave the math to the parties.  If the parties dispute the correct calculation, they may return to the Court for resolution.

## IV.    CONCLUSION

The Court DENIES Holsum's Petition for Award of Attorneys' Fees and Prejudgment Interest (ECF No. 274), and GRANTS in part and DENIES in part Compass' Motion for Attorney Fees and Expenses, and Pre-Judgment Interest (ECF No. 290) and ORDERS Holsum to pay the damages award of $151,217.40, plus interest at a rate of 6.25% per annum.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August, 2022